IN THE UNITED STATES DISTRICT COURT

FOR THE NORTHERN DISTRICT OF CALIFORNIA

| | | |
|---|---|---|
| NORMAN RAMIL, | ) | |
| Petitioner, | ) | No C 04- 0678 JSW (PR) |
| vs. | ) | ORDER DENYING PETITION |
| D.L. RUNNELS, Warden, | ) | FOR A WRIT OF HABEAS CORPUS |
| Respondent. | ) | |

**INTRODUCTION**

Norman Ramil, a prisoner of the State of California, has filed a pro se petition for a writ of habeas corpus pursuant to 28 U.S.C. § 2254. Per order filed on June 23, 2004, this Court found that the petition, liberally construed, stated three cognizable claims under § 2254 and ordered respondent to show cause. Respondent filed an answer on October 21, 2004. Petitioner filed a traverse to the answer on June 29, 2005. This order denies the petition for writ of habeas corpus on the merits.

**PROCEDURAL BACKGROUND**

The following facts are not contested by the parties: on March 16, 2000, a Santa Clara County jury found Petitioner guilty of attempted grand theft. The trial court found that Petitioner had sustained three convictions that qualified as "strikes" under Cal. Penal Code § 667(b)-(I), and that he served a prior prison term within the meaning of Cal. Penal Code § 667.5(b). On June 19, 2000, the court sentenced Petitioner to a term of incarceration of twenty-five years to life

and ordered Petitioner to pay $1,000 in attorney's fees.

On November 21, 2002, the California Court of Appeal, First District, modified Petitioner's judgment by deleting the attorney's fee order, but otherwise affirmed the conviction. The Supreme Court of California denied a petition for review in 2003. Petitioner filed the instant matter on February 18, 2004.

## **STATEMENT OF THE FACTS**

The facts, derived from the California Court of Appeal opinion, are summarized as follows:

Grainger is an industrial wholesale supply company that does not sell to the general public but only to businesses. One of Grainger's regular customers is Therma, an industrial construction company that primarily installs plumbing and ducting. At 1:30 p.m. on June 4, 1999, a Grainger employee received a telephone call from a man who claimed to work for Therma. When the Grainger employee asked the man to spell his last name, the man "stumbled" and hesitated before giving the name Brad Garrett. The man ordered a number of items not normally purchased by Therma in quantities of two. The man provided a purchase order number so that the order could be billed [to] Therma, but the number was inconsistent with the purchase order numbers that Therma usually used. The total cost of the items ordered was $ 990.36.

After the Grainger employee told the man that these items would have to be picked up at Grainger's San Jose facility, rather than at its Mountain View facility, she could hear the man discussing this with another man in the background. The phone call took 15 to 20 minutes, which was unusually long for a Therma order. The Grainger employee told the man that the order would be ready for pickup in San Jose in 30 minutes.

After she completed her conversation with the man, she contacted Therma to determine whether the order was legitimate. Therma confirmed that the order was not legitimate and asked the Grainger employee to arrange for the police to be contacted when the man came to pick up the order. The Grainger employee contacted Tim Collins, the manager of Grainger's San Jose facility, gave him this information and electronically transmitted the order to him. Collins also confirmed with Therma that the order was fraudulent. He took the order and placed it in his office so that the order could not be processed.

At about 3:30 p.m., Petitioner and John Gogue Rodriguez entered Grainger's San Jose facility. Petitioner approached Stephen Leon, a Grainger employee, at the will-call counter.

2

Petitioner said he was from Therma, was there to pick up an order and provided a purchase order number that matched the order that Collins had placed in his office.  Leon testified that Petitioner did not show him a piece of paper.  Leon went looking for the order and could not find it.  He radioed in search of the order, and Collins responded to Leon, told him to stall Petitioner and called the police.  Leon apologized for the delay and told Petitioner the order would be ready soon.  Petitioner checked back with Leon three or four times over the next half hour, and Leon continued to stall him.  Collins also came out once, apologized to Petitioner for the delay and promised to get the order ready.  After waiting for half an hour, Petitioner and Rodriguez left.

Petitioner and Rodriguez got into a pickup truck, and Petitioner drove across the street and parked in another parking lot. He then drove away but returned a few moments later and parked in a different parking lot.  Soon after that, at about 4:20 p.m., the police arrived, and Petitioner quickly drove out of that parking lot. Collins pointed the truck out to the police, and the police pursued the truck as it travelled "at a high rate of speed" for about a mile before it pulled over.  During this pursuit, Petitioner seemed to be "going right around in a circle" and trying to evade the police.

Petitioner did not work for Therma and was not authorized to purchase anything from Grainger on Therma's behalf.  A handwritten note was found in his pocket after his arrest.  It contained the purchase order number, a list of the items that had been ordered and a note addressed to "John" about how the merchandise would be split

Petitioner was charged by information with attempted grand theft (Pen. Code, § 484, 487, subd. (a), 664).  The crime was alleged as an "attempt to unlawfully take personal property, miscellaneous tools and property, . . . the property of Grainger Distributors."  It was further alleged that defendant had suffered three prior serious felony convictions within the meaning of Penal Code sections 667, subdivisions (b) to (I) and 1170.12 and served a prison term for a prior felony conviction (Pen. Code, § 667.5, subd. (b)).  The prior conviction and prison prior allegations were bifurcated, and Petitioner waived his right to a jury trial on these allegations.

Petitioner testified at trial.  He stated that he did not know there was anything illegitimate about the order, and he denied that he had any intent to steal anything from Grainger at any time.  He testified that he had believed that Rodriguez had prepaid for the tools.  He gave a fairly detailed description of the events that differed from the testimony given by the prosecution's witnesses. Petitioner stated that he had known Rodriguez for a few months and that Rodriguez telephoned him on June 4 and asked him for a ride to Grainger to pick up some tools for his company.  He agreed and Rodriguez arrived at his house around 2:30 p.m. or 3:30 p.m.

3

Rodriguez told him that he would give him $ 40 to pick up the tools with him and take the tools to "his job site" in Milpitas. Petitioner testified that Rodriguez claimed he was working for Therma on a landscaping job.

When they arrived at Grainger and got out of the truck, Rodriguez asked him to pick up the order for him because he had been "drinking all night" and "was tired." Rodriguez gave him a piece of paper with the purchase order number on it and told him to ask for that order. Petitioner testified that he did not read the piece of paper and had no idea what kind of tools they were going to pick up. They both entered the facility, and he went up to the counter alone. He told Leon that he "was there for a friend to pick up some tools." When Leon asked what company the order was for, defendant "told him Therma, because that's what [Rodriguez] said he worked for." Petitioner testified that he showed Leon the piece of paper with the purchase order number on it. After he and Rodriguez had waited for a while for the order, he "decided I didn't have all day to wait for the tools," and they left. He decided to leave Grainger without the tools because he was "tired," did not "like to sit in one place too long doing nothing" and did not think it was worth earning $ 40 if he was not "enjoying myself."

He and Rodriguez got back in the truck, and he drove back to his house. Rodriguez made a phone call, and Petitioner went into the house and got himself a drink of water. Rodriguez told him that his boss said the order was now ready and waiting, and they should return to Grainger and pick it up. Petitioner drove back toward Grainger, but Rodriguez asked him to park across the street from Grainger "and wait for awhile." He became impatient and started to drive away, but Rodriguez convinced him to park in another parking lot and wait a bit longer. Another five minutes elapsed, and he "decided to leave because something wasn't right." When he suggested leaving, Rodriguez said "Okay, nevermind. Let's just go." On the way back to his house, they were detained by the police.

The sole dispute at trial was whether Petitioner harbored the requisite intent. Defense counsel argued to the jury that Petitioner was "not the swiftest fox in the woods." The jury returned a guilty verdict. The court found true the prior conviction and prison prior allegations. The court refused to strike any of the prior conviction findings or to reduce the offense to a misdemeanor, but struck the punishment for the prison prior and imposed a state prison sentence of 25 years to life.

*People v. Ramil*, No. H021716, slip op. 2-10 (Cal. Ct. App. November 21, 2002)

(footnotes omitted).

1

## STANDARD OF REVIEW

2      This court may entertain a petition for a writ of habeas corpus "in behalf

3 of a person in custody pursuant to the judgment of a state court only on the

4 ground that he is in custody in violation of the Constitution or laws or treaties of

5 the United States."  28 U.S.C. § 2254(a).  A district court may grant a petition

6 challenging a state conviction or sentence on the basis of a claim that was

7 "adjudicated on the merits" in state court only if the state court's adjudication of

8 the claim: "(1) resulted in a decision that was contrary to, or involved an

9 unreasonable application of, clearly established Federal law, as determined by

10 the Supreme Court of the United States; or (2) resulted in a decision that was

11 based on an unreasonable determination of the facts in light of the evidence

12 presented in the State court proceeding."  28 U.S.C. § 2254(d).

13      Under the 'contrary to' clause, a federal habeas court may grant the writ if

14 a state court arrives at a conclusion opposite to that reached by the Supreme

15 Court on a question of law or if the state court decides a case differently than the

16 Supreme Court has on a set of materially indistinguishable facts.  *Williams v.*

17 *Taylor*, 529 U.S. 362, 412-13 (2000).  "Under the 'unreasonable application'

18 clause, a federal habeas court may grant the writ if a state court identifies the

19 correct governing legal principle from the Supreme Court's decisions but

20 unreasonably applies that principle to the facts of the prisoner's case."  *Williams*,

21 529 U.S. at 413.  As summarized by the Ninth Circuit: "A state court's decision

22 can involve an 'unreasonable application' of federal law if it either 1) correctly

23 identifies the governing rule but then applies it to a new set of facts in a way that

24 is objectively unreasonable, or 2) extends or fails to extend a clearly established

25 legal principle to a new context in a way that is objectively unreasonable."  *Van*

26 *Tran v. Lindsey*, 212 F.3d 1143, 1150 (9th Cir. 2000) *overruled on other*

27

28                                      5

1    *grounds*; *Lockyer v. Andrade*, 538 U.S. 63, 70-73 (2003) (citing *Williams*, 529

2    U.S. at 405-07).

3            "[A] federal habeas court may not issue the writ simply because that court

4    concludes in its independent judgment that the relevant state-court decision

5    applied clearly established federal law erroneously or incorrectly.  Rather, that

6    application must also be unreasonable."  *Williams*, 529 U.S. at 411; *accord*

7    *Middleton v. McNeil*, 541 U.S. 433, 436 (2004) (per curiam) (challenge to state

8    court's application of governing federal law must not only be erroneous, but

9    objectively unreasonable); *Woodford v. Visciotti*, 537 U.S. 19, 25 (2002) (per

10   curiam) ("unreasonable" application of law is not equivalent to "incorrect"

11   application of law).  In deciding whether a state court's decision is contrary to, or

12   an unreasonable application of, clearly established federal law, a federal court

13   looks to the decision of the highest state court to address the merits of the

14   Petitioner's claim in a reasoned decision.  *LaJoie v. Thompson*, 217 F.3d 663,

15   669 n.7 (9th Cir. 2000).  Where the state court gives no reasoned explanation of

16   its decision on a Petitioner's federal claim and there is no reasoned lower court

17   decision on the claim, a federal habeas court should conduct an independent

18   review of the record.  *See Himes v. Thompson*, 336 F.3d 848, 853 (9th Cir.

19   2003).

20           The only definitive source of clearly established federal law under

21   28 U.S.C. § 2254(d) is in the holdings of the Supreme Court as of the time of the

22   state court decision.  *Williams* 529 U.S. at 412; *Clark v. Murphy*, 331 F.3d 1062,

23   1069 (9th Cir. 2003).  While the circuit law may be "persuasive authority" for

24   the purposes of determining whether a state court decision is an unreasonable

25   application of Supreme Court precedent, only the Supreme Court's holdings are

26   binding on the state courts and only those holdings need be "reasonably" applied.

27

28                                              6

*Id.*

In his petition for writ of habeas corpus, Petitioner asserts three claims: (1) the trial court denied Petitioner his due process rights because there was insufficient evidence of theft by larceny and the jury was not instructed regarding theft by false pretenses; (2) the trial court's refusal to grant a two day continuance to allow a key defense witness to testify violated Petitioner's right to due process; and (3) the trial court's refusal to admit this witness' statements against penal interest deprived Petitioner of due process.

## DISCUSSION

**1.     Insufficient Evidence and Instructional Error**

Petitioner alleges that he was denied his right to due process because there was insufficient evidence of the elements of theft by larceny to sustain his conviction.  As discussed by the Court of Appeal denying Petitioner's claim under California law, the offense of theft by larceny is committed by every person who (1) takes possession (2) of personal property (3) owned or possessed by another, (4) by means of trespass and (5) with intent to steal the property and (6) carries the property away.  *See People v. Davis*, 19 Cal.4th 301, 305 (1998).

Petitioner contends that the evidence in this case was insufficient to prove that the property was obtained by means of trespass.   Petitioner argues that under California law, a trespass does not exist when the owner "freely and unconditionally" consents to the taking of his property.  *Id.*  Petitioner argues that because Grainger would have freely and unconditionally consented to giving its property to him, proof of the element of trespass was not present in this theft.

Petitioner asserts that the only offense of which he was arguably guilty was theft by false pretenses.  The crime of theft by false pretenses consists of three elements: (1) the making of a false pretense or representation by the

7

defendant, (2) the intent to defraud the owner of his property, and (3) actual reliance by the owner upon the false pretense in parting with his property. *Perry v. Superior Court*, 57 Cal.2d 276, 283 (1962); *People v. Ashley*, 42 Cal.2d 246, 259 (1954). According to Petitioner, his conviction is unconstitutional because the evidence showed only guilt of larceny by false pretenses, the trial court failed to instruct the jury on the elements of that crime, and there was insufficient evidence of theft by larceny.

The California Court of Appeal rejected Petitioner's argument, noting that Petitioner was charged with and convicted of *attempted* theft, not theft by larceny. Consequently, the state had to prove defendant possessed a specific intent to commit theft by larceny and did a direct, unequivocal act toward that end. *See People v. Camodeca*, 52 Cal.2d 142, 145 (1959). Relying on California law, the state court found that the evidence established that Petitioner had the specific intent to obtain the Grainger merchandise by "means of trespass." The court explained that under California law, "the act of taking personal property from the possession of another *is always a trespass* unless the owner consents to the taking freely and unconditionally or the taker has a legal right to take the property." *Davis*, 19 Cal.4th at 307 (emphasis added).

The court concluded that there was sufficient evidence to support guilt beyond a reasonable doubt because defendant had the specific intent to obtain the merchandise by "means of trespass" in that Petitioner intended to obtain the merchandise from Grainger by obtaining their "conditional release of the merchandise pending payment by Therma":

> The evidence demonstrated that defendant was well aware that he did not have the legal right to take the Grainger merchandise. The jury clearly rejected his testimony that he believed that Rodriguez had the right to take the merchandise. Substantial evidence also established that defendant did not believe that Grainger would freely and unconditionally consent to his taking of the merchandise. The prosecution proved that

> defendant's planned theft involved Grainger parting with the merchandise on the condition that Therma pay Grainger for the merchandise.  His scheme could not succeed in the absence of this condition.  Hence, defendant acted with the intent to obtain the merchandise from Grainger by means of a trespass, that is, Grainger's conditional release of the merchandise pending payment by Therma.  While, unbeknownst to defendant, Grainger and Therma were cooperating to snare him, that fact was irrelevant because the sole issue regarding trespass in a prosecution for attempted theft is the perpetrator's state of mind.  Substantial evidence supports the jury's verdict.

*Ramil*, slip op. 11-12.

In California, the common law crimes of larceny, embezzlement, obtaining money by false pretenses and kindred offenses have been consolidated by the provisions of Cal Pen Code § 484.  *See Callan v. Superior Court of San Mateo County*, 204 Cal App 2d 652 (1962).  Under Cal Pen Code § 484, there is simply one consolidated crime of theft.  *Id.*  The jury may therefore enter a verdict of guilty upon any theory of theft, as long as there sufficient evidence of an unlawful taking.  *People v. Counts*, 31 Cal App 4th 785, 793 (1995).

### A.    Legal Standard

A state prisoner who alleges that the evidence in support of his conviction cannot fairly be characterized as sufficient to have led a rational trier of fact to find guilt beyond a reasonable doubt states a constitutional claim, which, if proven, entitles him to federal habeas relief.  *Jackson v Virginia*, 443 U.S. 307, 321 (1979).  A federal court reviewing collaterally a state court conviction does not determine whether it is satisfied that the evidence established guilt beyond a reasonable doubt.  *Payne v Borg*, 982 F.2d 335, 338 (9th Cir 1992).

The federal court "determines only whether, after viewing the evidence in the light most favorable to the prosecution, any rational trier of fact could have found the essential elements of the crime beyond a reasonable doubt."  *Id.* (*quoting Jackson*, 443 U.S. at 319).  If confronted by a record that supports conflicting inferences, a federal habeas court "must presume -- even if it does not

affirmatively appear on the record -- that the trier of fact resolved any such conflicts in favor of the prosecution, and must defer to that resolution." *Jackson*, 443 U.S. at 326.  Only if no rational trier of fact could have found proof beyond a reasonable doubt may a writ of habeas corpus be granted. *Jackson*, 443 U.S. at 324.

A writ of habeas corpus is available under § 2254(a) "only on the basis of some transgression of federal law binding on the state courts." *Middleton v. Cupp*, 768 F.2d 1083, 1085 (9th Cir. 1985) (citing *Engle v. Isaac*, 456 U.S. 107, 119 (1982)), *cert. denied*, 478 U.S. 1021 (1986).  It is unavailable for violations of state law or for alleged error in the interpretation or application of state law. *Estelle v. McGuire*, 502 U.S. 62, 67-68 (1991); *Engle*, 456 U.S. at 119; *Peltier v. Wright*, 15 F.3d 860, 861-62 (9th Cir. 1994); *see, e.g., Little v. Crawford*, 449 F.3d 1075, 1082 (9th Cir. 2006) (claim that state supreme court misapplied state law or departed from its earlier decisions does not provide a ground for habeas relief).

A state trial court's refusal to give an instruction does not alone raise a ground cognizable in a federal habeas corpus proceedings. *See Dunckhurst v. Deeds*, 859 F.2d 110, 114 (9th Cir. 1988).  The error must so infect the trial that the defendant was deprived of the fair trial guaranteed by the Fourteenth Amendment. *See id.*  Whether a constitutional violation has occurred will depend upon the evidence in the case and the overall instructions given to the jury. *See Duckett v. Godinez*, 67 F.3d 734, 745 (9th Cir. 1995).

The omission of an instruction is less likely to be prejudicial than a misstatement of the law. *See Walker v. Endell*, 850 F.2d at 475-76 (citing *Henderson v. Kibbe*, 431 U.S. 145, 155 (1977)).  Thus, a habeas petitioner whose claim involves a failure to give a particular instruction bears an "'especially

heavy burden.'"  *Villafuerte v. Stewart*, 111 F.3d 616, 624 (9th Cir. 1997)

(quoting *Henderson*, 431 U.S. 145, 155).  Additionally, the instruction may not

be judged in artificial isolation, but must be considered in the context of the

instructions as a whole and the trial record.  *Id.*  Even if it is determined that the

instruction violated the Petitioner's right to due process, a petitioner can only

obtain relief if the unconstitutional instruction had a substantial influence on the

conviction and thereby resulted in actual prejudice under *Brecht*, 507 U.S. at

637.

### B.      Analysis

The California Court of Appeal's rejection of Petitioner's claim was not

contrary to or an unreasonable application of clearly established federal law.  *See*

*Williams*, 529 U.S. at 411.  The question before this Court is whether the state

court's finding that there was sufficient evidence proving Petitioner attempted to

commit an unlawful taking by trespass was contrary to, or an unreasonable

interpretation of, established federal law.   In this case, the evidence establishes

that Petitioner committed an attempted theft by larceny.  Sufficient evidence

supports the state court's determination that Petitioner committed a trespass by

his intention to take possession of the merchandise owned by Grainger based on

their conditional release pending payment by Therma.  *Ramil*, slip op. 11-12.  It

cannot be said that the state court's decision constitutes an unreasonable

interpretation of *Jackson*.   Based on the evidence here, a reasonable jury could

convict Petitioner beyond a reasonable doubt of attempted theft by larceny.  *See*

*Borg*, 982 F.2d at 338.

To the extent that Petitioner argues that the state courts incorrectly defined

trespass to include a taking under these circumstances, Petitioner does not state a

federal constitutional claim, but rather takes issue with the state court's

interpretation of state law.  *See, Estelle*, 502 U.S. at 67-68; *Little*, 449 F.3d at 1082.

Petitioner's challenge to the court's instructions on attempted theft is also without merit.  Rather than instruct on another form of larceny, the court instructed the jury on all the elements of attempted grand theft by larceny.  *Ramil*, slip op. at 13.  Petitioner does not allege that when the trial court did so it inadequately defined the elements of grand theft by larceny.  Rather, Petitioner's only challenges the court's failure to also instruct on theft by false pretenses.  But as discussed above, there was substantial evidence to support the jury's verdict of guilt on the charge of attempted grand theft by larceny.  Accordingly, it cannot be said that the trial court's failure to provide the false pretenses instruction violated the Petitioner's right to due process, much less resulted in actual prejudice under *Brecht*, 507 U.S. at 637.  *See Duckett*, 67 F.3d at 745.

## 2.   **Denial of Continuance**

Petitioner argues that the trial court's refusal to grant him a two-day continuance in order to obtain the attendance of a defense witness Rodriguez violated his Fourteenth Amendment right to due process.  Before trial, defense counsel was granted a continuance on two separate occasions for the purpose of serving Rodriguez with a subpoena.  On March 3, 2000, just days before trial commenced, Rodriguez was finally served with the subpoena.  *Ramil*, slip op. 14-15.

During in limine motions, the prosecutor noted that, if Rodriguez testified, he would introduce evidence of Rodriguez's perpetration of another theft from Grainger on June 3, 1999 to impeach Rodriguez's credibility.   The prosecutor asserted that he could show that Petitioner was implicated in that earlier theft.  The court ruled that if Rodriguez testified, the prosecution could introduce

evidence of the June 3 incident in rebuttal.  *Id.*

On March 13, 2000, with the prosecution's case coming to a close, defense counsel informed the court that Rodriguez "is failing to appear" on the subpoena.  *Ramil*, slip op. at 15.  Defense counsel explained that Rodriguez had called him after he was served with the subpoena and asked if there was any way he could avoid appearing because he was about to start a new job.  *Id.*  Defense counsel stated that Rodriguez agreed to be available within 12 hours upon notice by telephone.  Defense counsel said that he had telephoned Rodriguez repeatedly and left three messages on an answering machine, but Rodriguez had not contacted him.  Defense counsel stated that he did not anticipate hearing from him.  *Ramil*, slip op. at 16.

On the morning of March 14, Rodriguez did not appear.  *Id.*  Outside the presence of the jury, the court offered to issue a body attachment for Rodriguez.  Defense counsel accepted the offer.  *Ramil*, slip op. at 17.  He also requested the court continue the trial until the morning of March 16.   The court denied the request.  *Id.*

On the morning of March 15, defense counsel again requested a continuance of the trial, this time requesting the trial to continue until the morning of March 17.  *Id.*   Defense counsel informed the court that Rodriguez had contacted the defense investigator at 8:00 p.m. on March 14.  *Id.*  Rodriguez told the investigator that he had started a new job which required him to leave town, and that he would not be available to testify until March 17.  *Id.*  The court denied the continuance request, reasoning that there was no assurance that if the court granted the continuance witness Rodriguez would appear.  *Ramil*, slip op. at 18.

Rodriguez appeared and testified at Petitioner's June 2000 sentencing

hearing.  He testified that he could not remember much about the June 1999 incident.  He admitted that he knew Petitioner because they "did meth together." *Id.*  At one point, Rodriguez asked the court if he was obligated to answer the prosecutor's questions, and requested an attorney.  The court directed him to answer the prosecutor's questions, noting that he had already been sentenced for his participation in the June 1999 incident.  *Ramil*, slip op. at 18-19.

On appeal, the state appellate court concluded that the trial court did not abuse its discretion in denying Petitioner a continuance in order to obtain the attendance of witness Rodriguez.  The court reasoned as follows:

> The trial court's denial of defendant's continuance motion was based on its assessment that it was not reasonably likely that Rodriguez would appear on March 17.  The court's ruling is supported by the record.  It was obviously time consuming just to locate and serve Rodriguez in the first place.  He was immediately unwilling to submit to the subpoena and sought to avoid appearing on March 6.  Having agreed just a week earlier to appear within 12 hours upon telephonic notice, he ignored repeated telephone messages over a period of more than 48 hours demanding his appearance.  After a body attachment warrant issued, he still declined to appear as requested.  Instead, as he had earlier, he asked that his appearance be delayed.  The trial court reached a reasonable conclusion based on this history that it was unlikely that Rodriguez would appear on March 17 and therefore that a continuance was not merited.  Since the record supports its conclusion, and the unlikelihood of Rodriguez's appearance justifies the denial of the continuance motion, the trial court did not abuse its discretion.  Similarly, since the trial court's decision was not arbitrary but eminently reasonable, it did not violate defendant's federal constitutional right to due process.

*Ramil*, slip op. 20-21.

### A.   Legal Standard

The Supreme Court of the United States has noted that there are no specific tests for deciding when a denial of a continuance is so arbitrary as to violate due process.  *Ungar v. Sarafite*, 376 U.S. 575, 589 (1964).  The Court has stated, however, that in deciding whether to grant a continuance, the trial judge must be afforded broad discretion, *Morris v. Slappy*, 461 U.S. 1, 11-12 (1983);

*Avery v. Alabama*, 308 U.S. 444, 446 (1940), and that the trial court's "answer must be found in the circumstances present in every case, particularly in the reasons present to the trial judge at the time the request is denied." *Sarafite*, 376 U.S. at 589.

For denial of a continuance to form the basis of a petition for writ of habeas corpus there must be not only an abuse of discretion, but any resulting error must be "so arbitrary and fundamentally unfair that it violates constitutional principles of due process." *Bennett v. Scroggy*, 793 F.2d 772, 774-75 (6th Cir. 1986) (citation omitted). Moreover, the improper denial of a requested continuance warrants habeas relief only if there is a showing of actual prejudice to petitioner's defense resulting from the trial court's refusal to grant a continuance. *See Gallego v. McDaniel*, 124 F.3d 1065, 1072 (9th Cir. 1997); *Martel v. County of Los Angeles*, 56 F.3d 993, 995 (9th Cir. 1995) (en banc).

**B.     Analysis**

The California Court of Appeal's rejection of Petitioner's claim was not contrary to or an unreasonable application of clearly established federal law. *See Williams*, 529 U.S. at 411. The state courts found that it was unclear whether a continuance would serve a useful purpose because Petitioner was unable to show that Rodriguez could be obtained as a witness, even if the continuance was granted. Rodriguez had attempted to avoid service. He ignored a subpoena issued by defense counsel. He reneged on his agreement to cooperate and to remain available on telephone stand-by. He neglected to return defense counsel's repeated phone messages. And he was unmotivated to appear even after the trial court issued a body attachment warrant. Given Rodriguez's history of disregarding defense counsel's requests and court orders to appear, the trial court had reason to distrust Rodriguez's statement to defense counsel that he

would appear and to deny the motion to continue.  On this record, it simply cannot be said the trial court's denial of the continuance was so arbitrary as to violate due process.  *See Sarafite*, 376 U.S. at 589.

But even if the denial of the continuance amounted to constitutional error, Petitioner is not entitled to habeas relief because he has not established prejudice from his failure to call Rodriguez as a trial witness.  *See Brecht*, 507 U.S. at 623. Petitioner was able to present evidence of his defense that he lacked the requisite intent to steal the merchandise through his own testimony (RT 375-376).  *Cf. United States v. Pope*, 841 F.2d 954, 958 (9th Cir. 1988) (denial of a continuance violated due process where it prevented the defendant from introducing the only testimony that could have supported his defense theory).  As the Court of Appeal noted, "[t]he jury clearly rejected his testimony that he believed Rodriguez had the right to take the merchandise." *Ramil*, slip op. 21.  Petitioner is therefore not entitled to relief on this claim.

**3.**     **Exclusion of Evidence**

Petitioner argues that the trial court's exclusion of Rodriguez's out-of-court statements violates his Fourteenth Amendment right to due process. After Rodriguez failed to appear, defense counsel sought to admit hearsay statements Rodriguez made to the defense investigator.  Rodriguez made the statements over the course of two interviews, while serving a jail sentence for the June 3, 1999 Grainger theft.  Defense counsel asserted that the statements qualified for admission under the declarations against penal interest exception. *See* Cal. Evid. Code § 1230.

The California Court of Appeal opinion discussing Rodriguez's statements to the defense investigator during the two interviews is as follows:

> Rodriguez stated that defendant "has done nothing wrong."
> He also said "they felt they had not done anything wrong."

Rodriguez's description of the June 4 incident differed significantly from both the prosecution's trial evidence and defendant's trial testimony.

Rodriguez described how he had been asked by "Pedro" on June 3 to pick up an order from the San Jose Grainger facility. Rodriguez had met "Pedro" through "Brad" when Rodriguez was seeking "under-the-table work." Because Rodriguez did not have a truck and a truck was needed to pick up the Grainger order, Rodriguez asserted that he telephoned defendant, who he knew had a truck, on the morning of June 4. He said he had not seen defendant for three or four months prior to that date. Rodriguez then went over to defendant's house and asked him to take him to Grainger to pick up a will-call order. Defendant agreed to do so. Rodriguez told defendant that defendant would be paid "under the table money" for his assistance. He showed defendant a piece of paper that had the purchase order number on it and some other information. They left defendant's house in his truck at about 2:00 p.m.

Rodriguez claimed that, when they arrived at Grainger, both of them went to the counter to pick up the order. He did not claim that he gave the piece of paper with the purchase order number on it to defendant, but he "guessed" that defendant somehow "had" the piece of paper. He claimed that he told defendant to provide the purchase order number and the name "Brad Garrett" to the Grainger employee. After defendant and Rodriguez had both waited at the counter for about 20 minutes, they went outside and smoked a cigarette. Rodriguez claimed that he then spoke to another Grainger employee and asked if they could return for the order later if it was not yet ready. This employee said "fine." Defendant and Rodriguez discussed how this "was maybe a bad deal" because it was taking so long, and they left. Before they reached defendant's house, Rodriguez asked defendant to go back to Grainger "to see if there were any cops or anything." Defendant agreed to do so. They parked across the street from Grainger "to see if any cops were 'going to roll up.'" Eventually they drove away and were stopped by the police two miles away. During a second interview on October 27, Rodriguez again attempted to exculpate defendant, but Rodriguez made no statements inculpating himself.

*Ramil*, slip op. at 23-26. The Court of Appeal began its review of Petitioner's

claim by discussing the application of Cal. Evid. Code Section 1230. The court

stated, "[e]vidence of a statement by a declarant having sufficient knowledge of

the subject is not made inadmissible by the hearsay rule if the declarant is

unavailable as a witness and the statement, when made, . . . so far subjected him

to the risk of civil or criminal liability . . . that a reasonable man in his position would not have made the statement unless he believed it to be true." *Ramil*, slip op. at 26 (citing Evid. Code, § 1230).

The court noted, however, that "a hearsay statement that is partially inculpatory and partially exculpatory does not qualify for admission as a statement against penal interest." *Ramil*, slip op. at 26 (citing *People v. Duarte*, 24 Cal.4th 603, 610-611 (2000)).  The court explained that "one of the most effective ways to lie is to mix falsehood with truth, especially truth that seems particularly persuasive because of its self-inculpatory nature." *Id.* (citing *Williamson v. U.S.* 512 U.S. 594, 599-600 (1994).

Applying this reasoning, the court found that the trial court did not err in excluding Rodriguez's hearsay statements.  The court stated that although Rodriguez admitted to having an intent to "earn money under the table money," "to a large extent, Rodriguez's statements appeared to be aimed at exculpating both himself and defendant and shifting the blame to 'Pedro' and 'Brad.'" *Ramil*, slip op. at 27-28.  The court conclude that "Rodriguez's minimization of his own role and his attempt to exculpate both defendant and himself did not lend any trustworthiness to his statements and did not establish that the statements were 'so far' against his penal interest that he would not have made them if they were not true. *Ramil*, slip op. at 28.

### A.      Legal Standard

A district court may not review collaterally a state court's evidentiary ruling unless it violates federal law, either by violating a specific constitutional provision or by infringing upon the due process right to a fair trial. *Pulley v. Harris*, 465 U.S. 37, 41 (1984).  The erroneous exclusion of critical, corroborative defense evidence may violate both the Fifth Amendment due

1  process right to a fair trial and the Sixth Amendment right to present a defense.

2  *See Depetris v. Kuykendall*, 239 F.3d 1057, 1062 (9th Cir. 2001) (citing

3  *Chambers v. Mississippi*, 410 U.S. 284, 294 (1973)).

4      The exclusion of hearsay statements that are critical to the defense and

5  that bear "persuasive assurances of trustworthiness" may rise to the level of a due

6  process violation.  *See Chambers*, 410 U.S. 284, 302 (1973); *see also Chia v.*

7  *Cambra*, 360 F.3d 997, 1003 (9th Cir. 2004); *DePetris*, 239 F.3d at 1062.  A

8  court must ensure that the defendant has a full opportunity to defend himself

9  against the state's accusations.  *Chambers*, 410 U.S. at 294; *Chia*, 360 F.3d at

10  1003.  That opportunity must not be frustrated by a mechanical application of

11  state evidentiary law.  *Chambers*, 410 U.S. at 302; *Chia*, 360 F.3d at 1006.  The

12  state appellate court's decision must be measured against these clearly

13  established principles of federal law.

14      In deciding whether the exclusion of the hearsay statements violates due

15  process under *Chambers* and its progeny, the Ninth Circuit balances the

16  following five factors: (1) the probative value of the excluded evidence on the

17  central issue; (2) its reliability; (3) whether it is capable of evaluation by the trier

18  of fact; (4) whether it is the sole evidence on the issue or merely cumulative; and

19  (5) whether it constitutes a major part of the attempted defense.  *Chia*, 360 F.3d

20  at 1004.  The court must also give due weight to the state interests underlying the

21  state evidentiary rules on which the exclusion was based.  *Chia*, 360 F.3d at1006.

22      But even if exclusion of the evidence amounts to constitutional error, in

23  order to justify federal habeas relief, the erroneous exclusion must have had "a

24  substantial and injurious effect" on the verdict.  *Brecht v. Abrahamson*, 507 U.S.

25  619, 623 (1993).

26      **B.      Analysis**

27

28                                  19

1    Analyzing Petitioner's claim under the factors enumerated in *Chia*

2   establishes that the Court of Appeal's decision was not an unreasonable

3   application of Supreme Court precedent. *See Chia*, 360 F.3d at 1004. While the

4   statements may have been capable of evaluation by the trier of fact, the

5   statements did not have significant probative value in Petitioner's favor. *See*

6   *Chia*, 360 F.3d at 1004. Although Rodriguez's statements corroborated his

7   defense that he lacked the specific intent to commit the offense, Rodriguez's

8   statements conflicted with Petitioner's testimony regarding his own actions

9   before and during the commission of the crime. *Cf. id.* (excluded hearsay

10   statements found to be probative because they were consistent with defendant's

11   defense and would exonerate the defendant).

12    The excluded statements also lacked reliability. *See id.* Rodriguez's

13   statements were not distinctly against his penal interests, but aimed to exculpate

14   himself and Petitioner. *Cf. id.* (hearsay statements were reliable because they

15   were self-inculpatory). Additionally, the circumstances in which Rodriguez

16   made the statements do not provide for considerable assurance of their

17   truthfulness. Rodriguez's statements were largely exculpatory. Therefore, he

18   likely did not believe the statements could expose him to criminal liability.

19    The statements were not the sole evidence on the issue of Petitioner's

20   intent at the time of the offense. *See id.* Petitioner testified at trial that he had no

21   idea that there was anything illegitimate about the transaction, and that he

22   believed Rodriguez had prepaid for the tools. *Ramil*, slip op. at 7; *Cf. Chia*, 360

23   F.3d at 1004 (the excluded hearsay statements were the best and only evidence

24   that defendant possessed to substantiate his claims).

25    The state had a substantial interest in excluding the statements. *Chia*, 360

26   F.3d at 1006. The trial court considered Rodriguez's out-of-court statement in

27

28                                         20

light of Cal. Evid. Code section 1230, and found that the statements did fall under the exception and were inherently unreliable.  The state has a substantial interest in preserving orderly trials, judicial efficiency and in excluding unreliable or prejudicial evidence. *See Perry v. Rushen,* 713 F.2d 1447 (9th Cir. 1983).

A court could reasonably conclude that these factors outweighed those that supported admission of the proffered evidence.  It cannot be said that the Court of Appeal's decision was an "objectively unreasonable" application of clearly established Federal law.  *See Taylor*, 529 U.S. at 409.

Even if excluding Rodriguez's statements was constitutional error, the error was harmless.  *See Brecht*, 507 U.S. at 637.  The exclusion of the evidence did not result in actual prejudice.  *See Brecht*, 507 U.S. at 637.  Rodriguez's statements conflicted with the videotape of the incident, all of the prosecution's witnesses' testimony, Petitioner's trial testimony and Rodriguez's own prior statements.  In light of the overwhelming weight of evidence contradicting Rodriguez's statements, it cannot be said that the trial court's exclusion had a "substantial and injurious effect" on the verdict.  *See id.*

## **CONCLUSION**

After a careful review of the record and pertinent law, the court is that the petition for writ of habeas corpus must be DENIED.  The clerk shall enter judgment in favor of respondent and close the file.

IT IS SO ORDERED.

Dated: January 31, 2007

_____
JEFFREY S. WHITE
United States District Judge

21